UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL HILE, et al.,

    Plaintiffs,

v.

STATE OF MICHIGAN, et al.,

    Defendants.

_____ /

CASE NO. 1:21-CV-829

HON. ROBERT J. JONKER

## OPINION AND ORDER

### INTRODUCTION

Plaintiffs bring a series of First and Fourteenth Amendment challenges to a provision in Michigan's Constitution that prohibits use of State funds to benefit "any private, denominational or other nonpublic, pre-elementary, elementary, or secondary school." Mich. Const. art. VIII, § 2, ¶ 2 (the "Education Provision").[1] They call the provision a "Blaine Amendment" because in their

---

[1] The full Provision reads:

> No public monies or property shall be appropriated or paid or any public credit utilized, by the legislature or any other political subdivision or agency of the state directly or indirectly to aid or maintain any private, denominational or other nonpublic, pre-elementary, elementary, or secondary school. No payment, credit, tax benefit, exemption or deductions, tuition voucher, subsidy, grant or loan of public monies or property shall be provided, directly or indirectly, to support the attendance of any student or the employment of any person at any such nonpublic school or at any location or institution where instruction is offered in whole or in part to such nonpublic school students. The legislature may provide for the transportation of students to and from any school.

Mich. Const. art. VIII, § 2, ¶ 2.

view it embodies anti-religious sentiment generally, and anti-Catholic sentiment, in particular. The State resists that description and says the provision simply draws a hard line between public education and nonpublic education in all its forms—sectarian or secular—and ensures that State funds may be used only to support public education. Michigan moves to dismiss on both procedural and substantive grounds.

The Court finds that principles of comity preclude merits consideration of the plaintiffs' Free Exercise claims because the only way the Court could reach them is by first concluding that Michigan is misinterpreting and misapplying its own tax law. The Court concludes that plaintiffs' Fourteenth Amendment claim rests on a narrow political process theory that has never been applied to a case like this, and that should not be expanded to invalidate a provision of Michigan's Constitution that is facially neutral on parochial education. Accordingly, the Court grants defendants' Motion to Dismiss.

## BACKGROUND

Both Michigan and federal governments provide parents with a tax-advantaged way to fund some education expenses for their children. Parents can fund education savings plans (called Section 529 Plans federally, and Michigan Education Savings Plans ("MESPs") in Michigan) and make tax-deductible withdrawals from them to pay for qualified education expenses. The individual plaintiffs are parents of grade and secondary school aged children, and members of the plaintiff foundation. They want to send their children to private, religious schools and use MESP funds for tuition on a tax-advantaged basis. But if they do, they say the State would deprive them of any tax advantage because of the Education Provision. The State agrees that plaintiffs are not able to use MESP dollars on a tax-advantaged basis for their children's elementary and secondary education, but the State says this has nothing to do with the Education Provision in the State

2

Constitution; rather, it is Michigan tax law that precludes *everyone* in the State from using MESP funds on any elementary or secondary education expenses, whether for private or public education. Plaintiffs disagree and argue that Michigan misunderstands its own tax law.

The parties agree about the state statutory scheme up to a point. Section 529 of the Internal Revenue Code allows a state-sponsored education savings plan, like the MESP, which is authorized under Michigan's Education Savings Program Act. (Comp. ¶ 25, ECF No. 1, PageID.8; Def. Br. 3, ECF No. 13, PageID.75). Like a Roth IRA, contributions are tax deductible if they are withdrawn for "qualified higher education expenses." (Compl. ¶¶ 25-27; Def. Br. 3). Both the Michigan Income Tax Act and the Michigan Education Savings Program Act defer to Section 529 of the IRC as to what constitutes a "qualified higher education expense. (Compl. ¶ 27; Def. Br. 3). The statutory dispute between the parties is, in a nutshell, whether the meaning of "qualified" expense for Michigan purposes automatically floated with any changes made by Congress to the federal Section 529 provision (plaintiffs' view); or whether the meaning for Michigan remained static unless and until the Michigan legislature affirmatively made its own changes, no matter what Congress decided at the federal level (the defense position).

As originally structured, qualified expenses at both the federal and Michigan levels were limited to post-high school education. In 2017 the federal government expanded the definition of qualified expense to include tuition for elementary and secondary school education too. In particular, Congress expanded "qualified" expenses to include "tuition in connection with enrollment or attendance at an elementary or secondary public, private, or religious school." 2017 Tax Cuts and Jobs Act, codified at 26 U.S.C. § 529(c)(7). The Michigan legislature made no change, but plaintiffs say that expansion automatically kicked in under a proper construction of Michigan tax law, and that the only thing preventing them from taking advantage of the expansion

3

for their parochial school children is the Education Provision in the Michigan Constitution barring use of any state funds on non-public education. Defendants say that plaintiffs are wrong about Michigan tax law, and that the terms of the MESP program remained the same because the Michigan legislature made no changes. So in the defense view, no one in Michigan can use tax-advantaged MESP dollars for any grade or secondary school expenses, whether public or private. If the State is correct about the interpretation of its own tax law, there is no reason to reach plaintiffs' Free Exercise claims.

Plaintiffs' other claim arises under the Fourteenth Equal Protection Clause. Plaintiffs say that they are unfairly singled out and burdened as a religious minority in trying to compete for enactment of laws that would change the rules of the Education Provision in the Michigan Constitution. Plaintiffs argue that the purpose and effect of the Education Provision—despite its facial neutrality—is to burden religious parents who want a parochial education for their children, and that by putting the Education Provision in the State Constitution, the State has unfairly tilted the playing field against them. Plaintiffs say this is a version of a political process theory recognized in *Washington v. Seattle Sch. Dist. No. 1,* 458 U.S. 457, 467 (1982) (invalidating legislation enacted by initiative that allowed bussing for virtually any education purpose other than racial desegregation) and *Hunter v. Erickson*, 393 U.S. 385, 393 (1969) (invalidating city charter provision requiring electoral approval of any duly enacted ordinance regulating real estate transactions based on race). Unlike the Free Exercise claims, the validity of this theory is potentially at issue, regardless of which side is correct about the meaning of Michigan tax law.

**DISCUSSION**

1. *Tax Injunction Act / Comity*

Federal courts must always tread cautiously when asked to assess the constitutionally of state tax provisions. This is a matter of both congressional policy, embodied by the Tax Injunction Act, and complementary judicial doctrines of comity. Defendants say both apply here.

The Tax Injunction Act "TIA" provides that "district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA "creates a jurisdictional barrier to the federal courts for claims of declaratory or injunctive relief brought by a party aggrieved by a state's administration of its taxing authority." *Pegross v. Oakland County Treasurer*, 492 F. App'x 380, 384 (6th Cir. Nov. 18, 2014). Courts have interpreted the TIA "broadly . . . to bar suits for declaratory relief, injunctive relief, as well as monetary relief when there is an adequate remedy in state court." *Hedgepeth v. Tennessee*, 215 F.3d 608, 612 n.4 (6th Cir. 2000).

The comity doctrine, which is "more embracive than the TIA," restrains federal courts from entertaining claims in state taxation cases that risk disrupting state tax administration. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010). In *Fair Assessment in Real Estate Ass'n v. McNary*, the Supreme Court held:

> [O]ur comity cases have thus far barred federal courts from granting injunctive and declaratory relief in state tax cases . . . [W]e decide today that the principle of comity bars federal courts from granting damages relief in such cases[.]
>
> [W]e hold that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts.

454 U.S. 100, 108, 116 (1981); *see also Levin v. Com. Energy, Inc.*, 560 U.S. 413, 417 (2010) ("More embracive than the TIA, the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration.").

"The federal common-law principle of comity embodied in *Fair Assessment* 'reflects some of the same concerns that led Congress to enact the Tax Injunction Act' but 'stands on its own, and extends to cases seeking monetary damages as well as injunctive or other equitable relief.'" *Rafaeli, LLC v. Wayne Cnty.*, No. 14-13958, 2015 WL 3522546, at *6 (E.D. Mich. June 4, 2015) (quoting *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 541 (6th Cir. 2004). A long line of court decisions "'shows that a proper reluctance to interference by prevention with the fiscal operations of the state governments has caused [courts] to refrain from so doing in all cases where the Federal rights of the persons could otherwise be preserved unimpaired.'" *Levin*, 560 U.S. at 422 (quoting *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 282 (1909); *see also id.* (quoting *Matthews v. Rodgers*, 285 U.S. 521, 525-26 (1932) for the proposition that "[s]o long as the state remedy was 'plain, adequate, and complete,' the 'scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interference by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.'").

The court is satisfied that principles of comity preclude merits consideration of plaintiffs' First Amendment Challenges because they would require this court to disregard the State's own interpretation and consistent application of its own tax law, neither of which raises First Amendment concerns. Plaintiffs can take the issue up with Michigan tax authorities in the ordinary administration of the Michigan income tax collection process. But unless and until Michigan

changes the interpretation and application of its own tax law, and replaces it with the version Plaintiffs say it should have, there is no First Amendment issue.

Here, the State emphatically declares that its own version of MESP and related tax provisions limit qualified education expense to higher education, just as both the State and federal 529 programs originally did.  The State says the Michigan legislature did not broaden the term in 2017 when Congress did for Section 529 plans, and so the law of Michigan remains as it has from the start, limiting qualified education expenses to those in higher education, not grade or secondary schools.  Plaintiffs say Michigan is misinterpreting its own law, and plaintiffs offer reasonable argument to support their construction.  But Michigan has a reasonable argument to support its construction too.  And neither side has been able to demonstrate any State practice at odds with the way Michigan says its own law works.  There is nothing of record that shows Michigan approving any tax-advantaged use of MESP funds for any grade or secondary school expense in either private or public education.

If plaintiffs believe the State is wrong about its own interpretation of State law, they are free to test the issue in the ordinary process of State tax administration and collection, or potentially seek appropriate declaratory relief in the State system, which is adequate for the task.  Instead, plaintiffs want this Court to reach out and declare, first of all, that the State is wrong about its own interpretation of State tax law; and then, second, to use that declaration as a doorway to reaching Free Exercise challenges that in plaintiffs' view would require this Court to invalidate the Education Provision in Michigan's Constitution—a provision that has been on the books for over 50 years.  Comity precludes the Court from walking that path.

## 2. *Political Process Doctrine*

Plaintiffs' Equal Protection challenge is not necessarily precluded by the TIA or comity. If plaintiffs are correct about the theory, then regardless of which side is right about Michigan tax law, plaintiffs are suffering an unconstitutional burden simply by having what they allege is an anti-Catholic education provision embodied in the State Constitution. The Court does not believe plaintiffs are correct about their political process theory, however.

In the first place, the political process theory—if it still exists at all—is narrow. It has, to the Court's knowledge, never been applied outside the arena of racial discrimination, and even then, only in situations where the text of the legislation or ordinance at issue expressly singled out race as the trigger for additional procedural burdens. *See Seattle* and *Hunter*, *supra*. And even in the arena of explicitly racially discriminatory law, the theory has not always been well-received. *See, e.g., Schuette v. Coalition to Defend Affirmative Action*, 572 U.S. 291, 307 (2014) (plurality Opinion of Justice Kennedy "reject[ing]" broad reading of political process doctrine); 318 (concurring Opinion of Justice Scalia "repudiat[ing]" political process doctrine).

To the extent the doctrine has any continuing viability, the Court believes it is limited to the very narrow fact patterns of *Seattle* and *Hunter*. Here, racial categories are not at issue at all. Rather, plaintiffs seek to extend the theory to a new arena of religious discrimination. Moreover, unlike the express racially discriminatory provisions at issue in *Seattle* and *Hunter*, the Education Provision here is facially neutral. It does not by its terms single out any religious minority for unequal treatment; rather, it draws the line between public education, on the one hand, and all forms of private education on the other hand. That means the parents of children at non-sectarian private schools like Cranbook or Country Day are on exactly the same footing as the parents of children at Catholic Central or Grand Rapids Christian when it comes to use of public funds. None

may benefit from the use of public funds.  This Court is unwilling to expand an already tenuous political process doctrine into these new arenas.

## CONCLUSION

To reach the merits of plaintiffs' Free Exercise challenges to the Education Provision in Michigan's Constitution, this Court would first have to wade into the thicket of Michigan tax law. Worse than that from a comity perspective, the Court would have to find that the way Michigan interprets and consistently applies its own MESP tax provisions is wrong, and that plaintiffs are correct about how Michigan should be doing so.  Then, after declaring Michigan wrong about its own interpretation and application of its own tax law, plaintiffs would have this Court invalidate a 50-year-old, facially neutral provision of Michigan's Constitution.  The TIA and the broader doctrine of comity were designed to prevent a federal court from taking such an intrusive path through a state's own tax system.  The Court's consideration of plaintiffs' political process theory is not precluded by these doctrines, but in the Court's view the theory fails on the merits because it would require extending an already tenuous doctrine into an entirely new arena and to an entirely different kind of legal provision.

Accordingly, the Court grants defendants' Motion to Dismiss.


Dated:   September 30, 2022            /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       UNITED STATES DISTRICT JUDGE